IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Robert E. Haynes,                       )
                                     )
        Plaintiff,           )
                                     )
                                     )
     v.                      )  No. 21 C 6647
                                     )
                                     )
KONE, Inc. Employees'         )
Retirement Plan; and KONE,    )
Inc.,                          )
                                     )
        Defendants.         )

<u>Memorandum Opinion and Order</u>

After an adverse pension benefit determination, Robert Haynes sued his former employer KONE, Inc. ("KONE") under the Employee Retirement and Income Security Act ("ERISA").[1] The parties have cross-moved for summary judgment. For the following reasons, Haynes' motion is granted and KONE's motion is denied.

I.

During this litigation, the parties have at times disputed the contents of the administrative record. They now agree that it comprises at least all exhibits attached to KONE's statement of

---

[1] The KONE, Inc. Employees' Retirement Plan is also named as a defendant, but for simplicity "KONE" will refer to the defendants generally throughout this opinion.

material facts, ECF 140.[2] Haynes contends that four additional documents--a 2020 Form 5500 filed with the United States Department of Labor, ECF 133-4; the 2016 Summary Plan Description, ECF 133-9; and two Abroad with KONE policies, ECF 133-10, 133-11--belong in the administrative record. At a minimum, the Abroad with KONE policies are properly part of the administrative record because, as discussed below, they are highly relevant to the meaning of Plan terms and were directly incorporated into the International Assignment Agreement, which KONE presents as part of the administrative record. The Form 5500 and Summary Plan Description are unnecessary to resolve the parties' motions, so I do not address whether they are part of the administrative record. Haynes also asks that I consider a declaration filed with his motion, ECF 133-7, but because that document would not alter my decision, I also decline to decide whether it may be considered.

The following recitation of facts comes either directly from the administrative record or undisputed statements of material fact, unless otherwise noted. The relevant KONE Inc. Employees' Retirement Plan was in effect beginning January 1, 2008, and KONE

---

[2] Haynes submitted these same documents with his statement of material facts, but I will use the numbering ascribed by KONE. Citations to the administrative record will appear as "KONE AR ___."

restated its terms effective December 31, 2014.[3] The Plan is funded by KONE and provides a defined pension benefit to participants, paid from Plan assets.

Pension benefits under the Plan are calculated based on a participant's "Compensation," which is defined by Section 10.12 of the Plan in relevant part as follows:

> **(a)** For all purposes other than for purposes of Sections 8.02 and 8.04, the Employee's total base salary or other wages actually paid, plus overtime and bonuses, for current services rendered to the Employer . . . .
>
> . . .
>
> **(d)** For all purposes under the Plan, the following rules shall apply in determining the amount of a Participant's Compensation:
>
> . . .
>
> > (2) An office Plan Participant who is temporarily transferred to any legal entity in which the Corporation has an ownership interest in excess of 25% shall be credited with Compensation while temporarily performing duties for such entity, as if the Office Plan Participant was continuing to perform duties for the Corporation during that period. In the event the Compensation of a Participant accruing an Office Plan Benefit is denominated in a foreign currency, it will be converted to U.S. dollars using an exchange rate determined for each Plan Year by the Plan Administrator as of the first business day of the Plan Year.

---

[3] There are no material differences between the relevant portions of the 2008 and 2014 Plan Documents, so I will cite only the 2014 Plan Document and refer to it as "the Plan." For reference, the key provision in dispute is Section 10.12 of the 2014 Plan Document and Section 10.10 of the 2008 Plan Document.

KONE AR 078-080.

Haynes was employed by KONE from 1979 until he retired in 2021 and was a participant under the Plan. From August 2011 through the middle of 2015, Haynes temporarily worked at KONE's office in Canada. An "International Assignment Agreement" entered into between KONE and Haynes regarding that assignment provided in relevant part:

**5. SALARY**

5.1  As remuneration for the Employee's services, the Host Company shall pay to the Employee an annual net salary of **CAD 120,000** ("Salary"). Additionally, the Employee shall be entitled to a 'sign on bonus' of **CAD 20,000.**

. . .

5.3  The Salary is the net amount payable to the Employee. The Host Company shall be responsible for paying any income taxes and social security payments accrued because of the remuneration paid under this Agreement, to the payment of which the Employee is responsible for under the laws of the Host Country or the Home Country. . . .

5.4  The Salary shall be payable in accordance with the Host Company's standard payroll practice.

5.5  The Salary includes all remuneration payable in relation to the employment under this Agreement . . . .

. . .

5.7  The Home Company shall maintain in its records a home base salary to preserve any salary-related Home Company benefits and to determine the salary in the event of re-entry. The annual gross home base salary is **USD 149,300** (level 05/2011). . . .

4

KONE AR 382 (bold text in original).

There was also the Abroad with KONE policy.[4] Section 10 of that policy is titled "Compensation" and states in relevant part:

**10.3 Home Base Salary**
During the assignment, the Home company maintains a "Home base salary" in its records. This is normally the annual salary rate applicable just before the assignment, with standard Home base adjustments applied annually during the assignment.

The Home base salary preserves any salary-related Home company benefits and serves as a guide for re-entry level compensation after the assignment.

**10.4 Pensionable Salary**
Where the law permits, the Home base salary is also used as the basis for pension and continuing social security contributions in the Home country.

ECF 133-10 at 8.

At some point, Haynes engaged in discussion with KONE representatives about the correct calculation of his pension benefits for the period of his foreign assignment. On September 24, 2020, Lorraine Pelzer, a KONE human resources employee, wrote Haynes an email stating in part, "As previously explained, during your time in Canada you were on a net contract which means KONE paid your taxes; therefore, they are not included as pensionable

---

[4] There were two versions of the Abroad with KONE policy: one in effect from February 2006 until September 1, 2011, on which date the new policy document became effective. *See* 2011 Abroad with KONE policy, ECF 133-11 at 4 (section 1). The material terms of these versions are the same, but it appears that the earlier version applies since it was in effect when Haynes began his foreign assignment, so that is the version I will cite.

earnings as they would have been had you been paid a gross salary in the US." KONE AR 405.

Haynes, believing that the pension benefit attributable to his foreign assignment should have been calculated based on his gross salary and bonuses, submitted a claim to the Plan administrator on March 8, 2021. *See* KONE AR 256-423. As part of his claim, Haynes submitted KONE's payroll records reflecting "Regular Earnings" of $87,533 CAD and a "Bonus" of $75,100 CAD for August through December 2011; Regular Earnings of $209,747.86 CAD and Bonus of $9,613.25 CAD for 2012; and Regular Earnings of $217,900 CAD and Bonus of $11,040 CAD for 2013. KONE AR 411-13. By contrast, for 2012 and 2013, KONE maintained Haynes' Plan-based Compensation was $143,892.03 USD and $137,781.62 USD, respectively. KONE AR 124.

KONE denied his claim on June 2, 2021, *see* KONE AR 148-52, explaining:

> The Company as Plan Administrator interprets and applies a standard definition of "base salary" which does not include such extraneous perquisites such as the payment of foreign income and social security taxes paid on one's behalf. Therefore, when determining Mr. Haynes' Compensation for Plan purposes, amounts paid to Canadian taxing authorities on behalf of Mr. Haynes were not and will not be included as Compensation as such amounts are not part of his total base salary.

KONE AR 151 (underlining in original).

6

Haynes appealed this denial on September 9, 2021. *See* KONE AR 118-21. KONE denied the appeal, largely reiterating the same rationale used to deny his original claim. *See* KONE AR 122-47.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As with any summary judgment motion, [I] review cross-motions for summary judgment 'construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party.'" *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (quoting *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008)).

## A.

Because the Plan contains a grant of discretion to the administrator, this case is properly reviewed under an arbitrary and capricious standard, as I previously concluded. *See* Order, ECF 50 at 4-8; *see also Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007)). Under that standard, my review is limited to the administrative record. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009) (citing *Perlman v. Swiss Bank Corp.*, 195 F.3d 975 (7th Cir. 1999)). The standard is "deferential but

'not a rubber stamp,'" *Hennen v. Metro. Life Ins. Co.*, 904 F.3d 532, 539 (7th Cir. 2018) (quoting *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 766 (7th Cir. 2010)), and the administrator's decision should be upheld "so long as it 'has rational support in the record,'" *Schane v. Int'l Bhd. of Teamsters Union Loc. No. 710 Pension Fund Pension Plan*, 760 F.3d 585, 589 (7th Cir. 2014) (quoting *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008)).

"In conducting this review, [I] remain cognizant of the conflict of interest that exists when the administrator has both the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008)). Where that conflict is present, as it is here, it is "'weighed as a factor in determining whether there is an abuse of discretion.'" *Glenn*, 554 U.S. at 115 (quoting *Firestone*, 489 U.S. at 115). The weight that factor should receive depends on the gravity of the conflict. *Edwards*, 639 F.3d at 364-65. I need not determine with precision how much weight to afford the conflict, however, because even if it were absent, I would conclude KONE acted arbitrarily and capriciously. Accordingly, I give this factor only minimal weight.

8

B.

The parties' dispute turns on KONE's interpretation and application of the term "Compensation" in Section 10.12 of the Plan to exclude amounts paid to Canadian tax authorities for purposes of calculating Haynes' pension benefit. KONE's decision was arbitrary and capricious. To start, KONE has interpreted Section 10.12 to encompass gross salary and bonuses as pension-eligible Compensation when Haynes worked in the United States. KONE does not dispute that this was its practice, which the evidence supports. For example, a KONE representative explained to Haynes in an email that taxes paid while he was on foreign assignment were "not included as pensionable earnings as they would have been had you been paid a gross salary in the US." KONE AR 405. The payroll records for the years following Haynes' foreign assignment back this up. They include the gross amounts paid to Haynes, which, when added up, match the Compensation figures determined by KONE for those years.[5] In the letter denying Haynes'

---

[5] One can arrive at these Compensation figures by adding the amounts in the payroll records coded as "REG" (for "Regular Pay"), "B" (for "Bonus Pay"), "I" (for "Incentive Pay"), and "V1" (for "Veh Allow Taxed," presumably vehicle allowance). *See* KONE AR 132-33 (earnings code chart identifying which amounts are pension-eligible). For example, in 2016, when Haynes worked entirely in the United States, the sum of these categories is $259,145.96 USD (adding the lone $20 USD figure coded as "19" for "retro"--presumably retroactive payment--gets one to the $259,165.96 USD figure that KONE reported in the appeal denial letter as his Plan-based Compensation for 2016). KONE AR 786. Neither party explains why payments coded as "V1" are included, since the earnings code

9

appeal, KONE observed that Haynes' pensionable earnings went from $190,517.79 USD in 2011--a year in which he worked roughly half in the United States and half in Canada--to amounts ranging from $137,781.62 USD to $172,009.79 USD over the next four years while he worked in Canada. KONE AR 124. Then, from 2016--his first full year back in the United States--through 2020, that figure jumped to a range of $210,566.35 USD to $259,165.96 USD. *Id.*

Having so interpreted the Plan, KONE was not free to change course without an explanation. *See Schane*, 760 F.3d at 591-92 ("To interpret the same defined term in two different ways . . . is paradigmatically arbitrary and capricious." (citing *Reich v. Ladish Co.*, 306 F.3d 519, 525 (7th Cir. 2002)). Yet that it exactly what KONE did here. For time spent working in the United States, KONE interpreted "Compensation" to include Haynes' gross salary and bonuses; but for his time on foreign assignment, KONE interpreted this same provision to include only net salary and bonuses.

KONE's explanation for this difference withers under even the deferential scrutiny applicable here. In its view, a net-salary-only interpretation was reasonable for Haynes' foreign assignment

---

chart suggests this category is not pension eligible, *see* KONE AR 133, but the important point is that the payroll records corroborate that KONE did not use Haynes' net salary and bonuses to determine his Plan-based Compensation while he worked in the United States, at least from 2016 through 2020.

10

stint because during that time, KONE paid taxes on his behalf to Canadian tax authorities. But KONE offers no comment on the fact raised by Haynes that employers in the United States also routinely withhold taxes on their employees' behalf and pay them to the government. Furthermore, the fiction that KONE paid Haynes' Canadian taxes independently of compensating him is belied by KONE's own payroll records. KONE AR 411–13 (Haynes' payroll information for 2011–2013). Those documents reveal that, just like when Haynes worked in the United States, KONE paid him a gross amount, characterized as "Regular Earnings" in the records provided to Haynes by KONE employee Carole Evans, from which taxes and other figures were subtracted to calculate Haynes' "Net Pay." *Id.* If there is a relevant difference between the two contexts, KONE does not say what it is, leaving an "absence of reasoning in the record to support" the claimed distinction. *Hennen*, 904 F.3d at 539 (citation and internal quotation marks omitted).

Furthermore, KONE's explanation in both its letter denying Haynes' claim and the one denying his appeal that "total base salary actually paid" "does not include such extraneous perquisites such as the payment of foreign income and social security taxes paid on one's behalf," KONE AR 123–24, 151, is unavailing. As explored above, similar "extraneous perquisites" like domestic income taxes and social security taxes paid on one's behalf are included in the Plan's definition of Compensation.

11

Not only does KONE's explanation lack support in the record, but its letter denying Haynes' appeal contradicts that explanation. In the letter, KONE explained:

> In the ordinary course, the Company categorizes all amounts paid directly to, on behalf of or imputed for the benefit of employees as either included or excluded under the Plan's definition of Compensation. This is accomplished through earnings codes established within the payroll system. Please refer to **Exhibit 2** for a listing of the current earnings codes, which includes whether each such code is "401(k)/Pension Eligible" (i.e., whether it is to be included under the Plan's definition of Compensation). Amounts that are determined to be included as Compensation are then provided to the Plan's third-party administrator for purposes of determining each participant's benefit under the Plan.
>
> . . .
>
> With regard to any time period during which an employee is on foreign assignment, and in accordance with Section 10.12(d)(2) of the Plan, a similar process to that described above is utilized to determine which pay sources are includable as Compensation for Plan purposes. With regard to Mr. Haynes, please refer to the attached **Exhibits 3 through 7** which show how Mr. Haynes' base salary and bonus amounts were converted to U.S. dollars in accordance with Section 10.12(d)(2), for the time-period from 2011 through 2016 during which Mr. Haynes was on assignment in Canada.

KONE AR 124-25 (bold text in original).[6]

"Exhibit 2" referenced in the letter is the chart identifying the earnings codes discussed above. KONE AR 132-33. So, "[i]n the ordinary course," a participant would look to that chart to

---

[6] While this letter suggests Haynes worked in Canada through 2016, perhaps because that was at one point contemplated, there is no dispute that he returned to work in the United States sometime in 2015.

determine which earnings are "401(k)/Pension Eligible," and then add those earnings from his payroll to arrive at his Compensation. Most notably, "REG" ("Regular Pay") and "B" ("Bonus Pay") are pension eligible. Yet in Haynes' case, the Compensation KONE attributed to him for 2012 and 2013--identified in the letter denying his appeal, KONE AR 124--fall well short of the amounts for those years coded as "Regular Earnings" in the payroll documents provided to Haynes and which Haynes included in his claim submission, KONE AR 411-13.[7] Thus, by KONE's own explanation, Haynes was entitled to pensionable earnings based on his "Regular Pay" (plus amounts in other pension-eligible categories), but he was credited far less than that.

KONE argues that the second paragraph quoted above clarifies that this ordinary process did not apply to Haynes while he was on foreign assignment. Not so. The letter states that a "similar process" is used for foreign assignees, and nothing that follows

---

[7] I refer only to 2012 and 2013 here because those are the only years Haynes worked entirely in Canada for which there are payroll records. KONE offers "Compensation Collectors" prepared by Deloitte, KONE AR 135-47, but those documents nowhere refer to "Regular Pay," instead referring to earnings amounts like "Base Salary" not provided for in the earnings code chart KONE claims is needed to calculate Plan-based Compensation. Furthermore, KONE does not argue here that "Regular Pay" (the designation used in the earnings code chart) and "Regular Earnings" (the designation used on the payroll documents provided to Haynes) should be interpreted differently. Nor did KONE take that position in its letters denying Haynes' claim or appeal, even though Haynes submitted the payroll documents he had received as evidence of his total base salary.

so much as hints that the earnings codes in Exhibit 2 are not used to determine pension eligible earnings for those employees in the same way they are used for domestic ones. Additionally, the letter elsewhere states that Haynes' Compensation figures for 2010 through 2020, which includes the time he spent in Canada, "were determined based on the earnings codes methodology described above." KONE AR 124.

KONE also argues that because both the terms "total" and "gross" appear in Section 10.12's definition of Compensation and other parts of the Plan, they "are not synonymous for purposes of the Plan." KONE Resp., ECF 160 at 3. However, that position is inconsistent with KONE's typical practice of awarding pension benefits based on gross salary and bonuses for domestic employees. KONE does not explain why it treats the terms synonymously in one context, but not others.

Related portions of the Plan are also run counter to KONE's decision. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) ("[T]he plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement." (citation omitted)). Section 10.12(d)(2) states that foreign assignees "shall be credited with Compensation while temporarily performing duties for such entity, as if the Office Plan Participant was continuing to perform duties for the Corporation during that period." KONE AR

14

080. Haynes' Compensation included his gross salary and bonuses while working in the United States, so this provision suggests the same should have been true during his temporary foreign assignment. If not, KONE does not explain what role that portion of Section 10.12(d)(2) plays. *See Schultz*, 670 F.3d at 838 ("All language of a plan should be given effect without rendering any term superfluous."). This provision also undercuts KONE's explanation that it was free to treat domestic employees differently than foreign assignees for Plan purposes, since the provision dictates that foreign assignees "shall" be credited with Compensation in the same manner as if they were continuing to work domestically.

Documents outside the Plan offer additional aid in understanding the Plan's definition of Compensation. Where the words of a benefit plan "leave gaps," "a court must often 'look outside the plan's written language to decide what an agreement means." *U.S. Airways v. McCutchen*, 569 U.S. 88, 102 (2013) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011)); *see also Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 462-63 (7th Cir. 2001) (finding objection to consideration of contract external to benefit plan misplaced because contract provided evidence of the claimant's compensation, which was relevant to calculation of her benefits). Both parties appeal to the International Assignment Agreement in their arguments, and both accept that document is part of the administrative record. The Abroad with KONE Policy is

expressly incorporated into the International Assignment Agreement, so its consideration is proper, too. *See* KONE AR 388 ("The Abroad with KONE . . . policy shall be applied as part of the terms and conditions of this Agreement. In the event of discrepancies between the terms of this Agreement and the aforesaid policies, the terms of this Agreement shall prevail.").

The International Assignment Agreement pegs as misguided KONE's decision to grant Haynes pension credit based on only his net salary while abroad. KONE claims the agreement supports its position because it states in section 5.1 that Haynes' "Salary" while working in Canada would be $120,000 CAD, plus a $20,000 CAD bonus. KONE AR 382. But the agreement explicitly states in section 5.3 that "the Salary is the net amount payable to the Employee." *Id.* There is no dispute that this was Haynes' initial net salary while on assignment in Canada, but that is not determinative of his Plan-based Compensation for that period.

Instead, the agreement lends support to Haynes' position. It states in section 5.7 that KONE "shall maintain in its records a home base salary," and specifies "[t]he annual gross home base salary is USD 149,300." *Id.* KONE argues that, per the terms of that provision, the purpose of keeping track of this figure was simply "to determine the salary in the event of re-entry," but KONE neglects to mention the other listed purpose, which was to "preserve any salary-related Home Company benefits." *Id.* Thus,

16

this provision is doubly revealing. First, it suggests an intent to track the listed salary to "preserve any salary-related Home Company benefits," which would include the pension benefit. Second, and more striking, the provision uses the term "base salary" to mean "gross" salary, since it states that KONE will keep track of a "home base salary" for benefit purposes and then, in the same provision, lists the "gross home base salary" as $149,300. This significantly undermines the foundation of KONE's position, which is that "base salary" does not equate to "gross salary." According to the chart KONE provided in its letter denying Haynes' appeal, he was credited less than $149,300 USD for pension purposes in 2012, 2013, and 2014 (and the $149,300 USD figure presumably does not include bonuses, which all agree count in some form toward his Compensation), the years Haynes worked fully in Canada. Clearly, that figure played no role in calculating Haynes' Plan-based Compensation for those years.

The Abroad with KONE policy is also contrary to KONE's position. Like the International Assignment Agreement, the Abroad with KONE policy states that "Home base salary preserves any salary-related Home company benefits," ECF 133-10 at 8 (section 10.3), further bolstering the notion that the "home base salary" of $149,300 USD identified in the International Assignment Agreement should have played some role in calculation of his pension benefit.

17

The Abroad with KONE policy goes on to state: "Where the law permits, the Home base salary is also used as the basis for pension and continuing social security contributions in the Home country." ECF 133-10 at 8 (section 10.4). If the $149,300 USD figure identified in the International Assignment Agreement was Haynes' "home base salary"--KONE does not explain how it could not be-- then the Abroad with KONE policy dictates, in terms not conflicting with those of the International Assignment Agreement, that is the applicable figure for pension purposes. To the extent a different conclusion may be drawn, KONE does not explain how.

KONE argues that, because I should not consider Haynes' submitted affidavit, there is no basis upon which to find Haynes had received the Abroad with KONE policy. But KONE does not dispute the veracity of the document, and it was expressly incorporated into the International Assignment Agreement that is indisputably part of the administrative record upon which KONE relies and which Haynes received. Whether or not there is evidence to support that Haynes received a copy of this policy, its pertinence is the light it sheds on the meaning of the Plan terms.

KONE stresses that it "need only have given the reason for [the] decision" and that it had no obligation "to explain 'why it is a good reason.'" KONE Mem., ECF 139 at 7 (quoting *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996)). The trouble for KONE is that its reason--that it treated Haynes' pensionable earnings

18

differently while on foreign assignment because it paid his taxes for him--lacks a basis in the record. An instructive opinion is *Hennen*, in which the plan administrator denying benefits had on its side a single doctor's opinion against the opinions of many other doctors. 904 F.3d at 540–41. So while one could say the administrator in *Hennen* gave a reason in a pedantic sense, its decision did not withstand arbitrary-and-capricious review. KONE further presses that, in denying Haynes discovery beyond the administrative record, I effectively concluded that the explanation KONE gave for calculating Haynes' benefits the way it did passed muster. But whether additional discovery is permitted in ERISA cases is distinct from whether a plan administrator should prevail under arbitrary-and-capricious review, otherwise orders denying additional discovery would be dispositive in ERISA cases.

The above discussion reveals the ways in which KONE's decision was arbitrary and capricious. That result comports with common sense: one would not expect to be so heavily penalized by way of a reduction in pension benefits--remember, according to KONE, Haynes' pension-eligible earnings fell by tens of thousands of dollars during his foreign assignment, *see* KONE AR 124--absent language in the Plan or elsewhere warning of that result. Haynes is thus entitled to summary judgment.

III.

That leaves the matter of remedy. "When a plan administrator fails to provide adequate reasoning for its determination, [the] typical remedy is to remand to the plan administrator for further findings or explanations." *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (citations omitted). One thing is clear: on this record, KONE was not entitled to calculate Haynes' pension benefits based only on his net salary and bonuses while he was abroad in Canada. But even Haynes acknowledges that there are at least two other possible routes: calculate Haynes' Plan-based Compensation using the gross earnings he received in Canada (converted to U.S. dollars per Section 10.12(d)(2) of the Plan) or do so using Haynes' "home base salary" identified in the International Assignment Agreement. I cannot say with certainty what the proper calculation is, so as is usually the case, remand to the administrator to calculate Haynes' pension benefit consistent with this opinion is the right course here.

IV.

For the foregoing reasons, Haynes' motion for summary judgment is granted and KONE's motion for summary judgment is denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: June 27, 2024